# United States District Court
# Central District of California

| | |
|---|---|
| LIDIA GONZALEZ; RICHARD ARCIGA; and YESENIA MARTINEZ,<br><br>    Plaintiffs,<br><br>    v.<br><br>COUNTY OF LOS ANGELES; CITY OF LONG BEACH; PATRICK FREY; ADRIAN GARCIA; MARK BUGEL; CHRISTOPHER BRAMMER; MARY MARSCHKE; ANTON FISCHER; ALFREDO CHAIREZ; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case № 2:18-cv-09117-ODW (ASx)<br><br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [56]** |

## I.    INTRODUCTION

Plaintiffs Lidia Gonzalez, Richard Arciga, and Yesenia Martinez brought several causes of action for civil rights violations under 42 U.S.C. § 1983 and state law against Defendants the County of Los Angeles ("County"), the City of Long Beach ("City"), Patrick Frey, Adrian Garcia, Mark Bigel (erroneously sued as Mark Bugel), Christopher Brammer, Mary Marschke, Anton Fischer, and Alfredo Chairez. Plaintiffs have already settled their claims against Frey. (Not. Cond. Settlement, ECF No. 80.) And all claims against the County have already been dismissed. (Order Granting in Part and Denying in Part County Defs.' Mot. to Dismiss, ECF No. 31.)

Now, the remaining Defendants (for purposes of this Order, "Defendants") move for summary judgment. (Mot. Summ. J., ECF No. 56.) The matter is fully briefed. (Opp'n, ECF No. 65; Reply, ECF No. 78.) For the following reasons, the Motion is **GRANTED in part** and **DENIED in part**.[1]

## II.   PRELIMINARY PROCEDURAL ISSUES

To begin, the Court must address some outstanding procedural issues. First, despite the Court granting Plaintiffs ex parte relief to file a late Opposition by January 20, 2021, Plaintiffs filed their Opposition brief and Statement of Genuine Disputes ("PSGD") on January 21, 2021, a day beyond the extended deadline. (*See* Order Granting Ex Parte Appl., ECF No. 64; Opp'n; PSGD, ECF No. 69.) Plaintiffs also filed a second ex parte application for a one-day extension to cure the untimeliness. (Second Ex Parte Appl., ECF No. 72.) Defendants objected to the untimely filings and opposed the second ex parte application. (Defs.' Joinder in Frey's Obj., ECF No. 73; Opp'n to Second Ex Parte Appl., ECF No. 74.) The second ex parte application remains pending. (Min. Order Deferring Ruling, ECF No. 76.)

Then, Plaintiffs filed a Statement of Additional Facts ("PSAF") on January 25, 2021, five days beyond the deadline to oppose and four days beyond the deadline requested in the Second Ex Parte Application. (PSAF, ECF No. 75.) Because Defendants' Separate Statement of Uncontroverted Facts and Conclusions of Law ("DSUF") asserts sixty-three purportedly undisputed facts, (*see* DSUF, ECF No. 57-1), the PSAF includes facts numbered from sixty-four through eighty-two. Defendants objected to the PSAF as untimely. (Obj. to PSAF, ECF No. 77.)

Then, Defendants filed (1) a Reply to the PSGD and (2) a Response and Objection to the PSAF. (Defs.' Resp. to PSGD, ECF No. 79; Defs.' Resp. & Obj. to PSAF, ECF No. 81.) Confoundingly, Defendants' Response and Objection to the PSAF mostly ignores the PSAF. Rather than responding to Plaintiffs' facts that were

---

[1] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

numbered sixty-four through eighty-two, Defendants created an entirely new list of facts beginning again with number sixty-four and ending with one-hundred and thirty. In other words, there are now two different sets of facts that are numbered sixty-four through eighty-two.[2] (*See* Defs.' Resp. & Obj. to PSAF ¶¶ 64–82; PSAF ¶¶ 64–82.)

District courts have inherent power to control their dockets. *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010). Filings that do not comply with the Court's rules may be stricken and not considered. *See Insight Psych. & Addiction, Inc. v. City of Costa Mesa*, No. 8:20-cv-00504-JVS (JDEx), 2021 WL 878467, at *2 (C.D. Cal. Jan. 15, 2021). The Court's discretion also works both ways; "[t]he Court has discretion to consider documents that are not timely filed." *Gyene v. Steward Fin., Inc.*, No. CV 12-43355 DSF (AJWx), 2012 WL 12884685, at *2 (C.D. Cal. Aug. 21, 2021).

The Court has considered all the objections and deficiencies identified above. The Court **STRIKES** Defendants' Response and Objections to Plaintiffs' Statement of Additional Facts as improper because it responds to nothing and does not comply with rules for numbering. (ECF No. 81.) For procedural purposes, Plaintiffs' Second Ex Parte Application is **DENIED**. (ECF No. 72.) Still, the Court in its discretion will consider the untimely Opposition and Plaintiffs' Statement of Genuine Disputes. The Court will similarly consider Plaintiffs' untimely Statement of Additional Facts, which stands unrebutted. Now, for the Motion.

### III.  BACKGROUND

On September 15, 2017, Long Beach Police Department Detectives Garcia and Bigel assisted Deputy District Attorney Frey with jury selection in a gang-related-

---

[2] Defendants compiled a new list of facts, harvested from Plaintiffs' Opposition as if Plaintiffs had initially compiled the list, when in fact Plaintiffs' PSAF included an entirely different list of additional facts. In doing so, Defendants ignore and attempt to supplant Plaintiffs' facts numbered sixty-four through eighty-two, thereby causing immense confusion. There was no need for this. The Court already disregards facts not found or supported in the parties' separate statements of fact. *See* C.D. Cal. L.R. 56-3. Defendants' filing serves no beneficial utility and, arguably, could only work against Defendants' interest as it would invite the Court to consider facts which Plaintiffs neglected to identify in their separate statements.

murder trial (the "Trial") in courtroom S24 of the superior courthouse in Long Beach, California. (DSUF ¶ 1.) At the Trial, Daniel Gonzalez Jr. ("Gonzalez Jr.") stood accused of murder after he and two others, Hector Bejar and Timothy Cisneros, became involved in an altercation with another group of men, which led to Gonzalez Jr. shooting and killing a victim from the other group. (*Id.* ¶ 2.)

When the Trial began that morning, Lidia (Gonzalez Jr.'s mother), Michelle Gonzalez (Gonzalez Jr.'s sister), Richard Arciga (Michelle's boyfriend), Andy Saldana (Lidia Gonzalez's son), and Yesenia Martinez (Gonzalez Jr.'s then-girlfriend) entered the courtroom and sat in the gallery together during the jury selection process. (*Id.*) Two of the prosecution's witnesses, Angel Jones and Aaliyah Berry, were also in the courthouse during the jury section process. (*Id.* ¶ 7.) Both Jones and Berry were accompanied by their relatives, including their respective mothers, Shanta Reyes and Tara Phipps. (*Id.* ¶ 8.)

Around 11:00 a.m., during a Trial recess, Lidia, Michelle, Yesenia, and Richard (together, the "Gonzalez Group") exited the courtroom and stood together in the hallway across from the courtroom entrance. (*Id.* ¶ 9.) At the same time, Phipps sat on a bench next to the courtroom entrance. (*Id.*) And a man wearing yellow pants, whose identity remains unknown, was sitting on the same bench. (*See id.* ¶ 9; PSAF ¶ 77; Not. of Manual Lodging, Ex. A ("Corridor Video"), Ex. B ("Elevator Lobby Video"), ECF No. 83.) The Gonzalez Group noticed that the man in yellow pants was holding up his phone apparently photographing or recording them, so they became uncomfortable and moved further down the hallway. (PSAF ¶ 67.) In the seconds before 11:05:18 a.m., Lidia did something with her cellphone—what exactly she did with her phone is in dispute. (*See id.* ¶ 81.) Plaintiffs claim that she merely "checked" her phone, while Defendants maintain that she pointed her phone towards the prosecution's witnesses as if to take photographs of them. (DSUF ¶ 32, PSGD ¶ 32.) To be sure, the footage is not very clear, but it does show Lidia move her phone in a manner that could be consistent with recording a video, in the seconds

leading up to 11:05:18 a.m. (*See* Corridor Video at 11:05:10–11:05:18.) At exactly 11:05:18 a.m., the man in yellow pants stood up from the bench. (Elevator Lobby Video at 11:05:18.) Also, at exactly 11:05:18 a.m., Lidia ceased whatever it was she was doing with her phone and turned to face the rest of the Gonzalez Group. (Corridor Video at 11:05:18.) Then, the man in yellow pants walked in the direction of and past Plaintiffs out of the camera's line of sight, then returned to the bench, again walking past Plaintiffs to get there. (*Id.*; *see* PSAF ¶ 68.)

At some point, Phipps informed a bailiff that the Gonzalez Group had been taking photographs of her, and the bailiff advised the Gonzalez Group that it was illegal to record witnesses. (DSUF ¶¶ 10–11.) Garcia heard about Phipps's accusations against the Gonzalez Group, so he entered the courtroom to relay the information to Frey. (*Id.* ¶ 14.) Then, Garcia returned to the hallway to locate other witnesses. (*Id.* ¶ 15.)

The Gonzalez Group returned to the courtroom, and as they passed by the prosecution's witnesses and their families, Michelle and Phipps[3] began arguing. (*See* PSAF ¶ 76–77.) Phipps began crying and shouted that the Gonzalez Group were intimidating her by taking photographs. (DSUF ¶ 17.) Then, as Garcia was exiting the courtroom, he heard Michelle say something about "snitching." (*Id.* ¶ 16.) The parties dispute the particulars of what Michelle said; they also dispute what she meant. Defendants contend that she said, "You all better stop snitching!"—the implication being that the witnesses should stop testifying against Gonzalez Jr. at the Trial. (*Id.*) Plaintiffs maintain that Michelle actually told them to stop "dry snitching"—the implication being that the witnesses should stop falsely accusing the Gonzalez Group of recording them in the courtroom hallway. (PSGD ¶ 16 (citing Decl. of Yesenia Martinez ¶¶ 33–34, ECF No. 68).) In any event, Garcia again returned to the courtroom to inform Frey of Michelle's comments. (*Id.* ¶ 19.)

---

[3] Admittedly, it is not clear whether this was Phipps or another one of the prosecution's witnesses or their family members. However, by cross-referencing all accounts of the events, it appears that this was likely Phipps.

After the Gonzalez Group returned to the courtroom and took their seats in the gallery, Frey saw Lidia remove her cell phone from her purse. (*Id.* ¶¶ 20–21.) Defendants assert that Lidia was impermissibly "using" her phone in the courtroom, but Plaintiffs maintain she was simply silencing her phone because she was instructed to do so. (*Id.*; PSGD ¶ 21.) Either way, Frey confiscated Lidia's phone because he heard about what occurred in the hallway from Garcia, and he did not want Lidia to delete evidence (i.e., photographs of the prosecution's witnesses) from her phone. (DSUF ¶¶ 22–23.)

Meanwhile, Garcia and Bigel exited the courtroom to investigate the conduct that had occurred. (*Id.* ¶ 19.) There, Phipps told Bigel that she observed the Gonzalez Group taking photographs of her, and that she was scared for her safety and for the safety of her daughter. (*Id.* ¶ 25.) Relatedly, Garcia was told that Berry became frightened and began to cry when she heard of the Gonzales Group taking photographs. (*Id.* ¶ 26.) Phipps also told Bigel that one of the Gonzalez Group had yelled the phrase "snitching bitches." (*Id.* ¶ 27.) Bigel then interviewed Reyes, who informed him that she had *not* seen the Gonzales Group take photographs, but that she had heard as much from Phipps. (*Id.* ¶ 28.)

Garcia requested additional police officers to assist at the courtroom, and he briefed Officers Chairez, Brammer, Fischer, and Marschke when they arrived. (*Id.* ¶¶ 29–30.) Marschke was directed to review video footage from the surveillance cameras in the courthouse hallways. (*Id.* ¶ 31.) After reviewing the footage, Marschke told Garcia that she had observed Lidia apparently point her phone in the direction of the bench. (*Id.* ¶ 35.) That is when Garcia and Bigel determined there was probable cause to arrest the Gonzalez Group (i.e., Plaintiffs plus Michelle) for witness intimidation. (*Id.* ¶ 36.)

Defendants arrested Plaintiffs and Michelle for witness intimidation. (*Id.* ¶ 37.) Chairez handcuffed Lidia; Brammer handcuffed Michelle; Fischer handcuffed Arciga; and Marschke handcuffed Martinez. (*Id.* ¶ 38.) Plaintiffs claim the handcuffs were

too tight, caused them wrist pain, and "left red marks." (DSUF ¶ 39; PSGD ¶ 40.) However, the handcuffs did not cause bruising or abrasions, and Plaintiffs did not seek any medical treatment. (DSUF ¶ 40.) Defendants also note that none of Plaintiffs had any minor children at the time of their arrest. (*Id.* ¶ 63.)

After being mirandized, Plaintiffs agreed to speak to the arresting officers. (*Id.* ¶ 41.) Plaintiffs denied photographing anyone at the courthouse, and Martinez informed officers that the man in yellow pants had been holding a cellphone in their direction. (*Id.* ¶¶ 42–43.) Plaintiffs testified that the actions of the man in yellow pants caused them to be concerned, scared, and intimidated, and they believed the man was sending photographs of them to other people. (*Id.* ¶ 44.)

Plaintiffs also consented to having their phones searched. (*Id.* ¶ 45.) There is no evidence that any photographs of the prosecution's witnesses were found on any of Plaintiffs' phones, but Chairez did discover text messages on Lidia's phone that had been sent to her son, Saldana, on September 14, 2017 (the day before). (*Id.* ¶ 46.) In those texts, Lidia had advised Saldana that the prosecution would be bringing "f[***]ing [Cisneros]" to testify in court, and she had instructed Saldana to bring a charged phone to record Cisneros's testimony. (*Id.* ¶ 47.) Lidia had also texted Martinez the day before, informing her that the prosecution would be bringing "the rat" Cisneros to testify at the Trial. (*Id.* ¶ 49.) She had also texted Michelle, referring to Cisneros as a "snitch." (*Id.* ¶ 48.)

Plaintiffs were transported to, and spent the night of September 15, 2017, in the Long Beach Jail before being released on bail. (*Id.* ¶¶ 52–53.) Shortly after Plaintiffs' arrest, Cisneros testified for two days in the Trial. (*Id.* ¶ 54.) On the first day, Cisneros testified favorably for the prosecution. (*Id.* ¶ 55.) On the second day, Cisneros was beaten up on the bus on the way to the Trial, and he recanted his testimony from the day before. (*Id.*)

On October 12, 2017, the District Attorney's Office charged Plaintiffs with felony witness intimidation under California Penal Code section 136.1 and added a

gang enhancement, which increased Plaintiffs' bail. (*Id.* ¶¶ 57–58.) Prior to these charges being brought, Garcia and Bigel submitted all police reports regarding the incident with Plaintiffs to the District Attorney's Office. (*Id.* ¶ 60.) Plaintiffs, unable to make the increased bail, were remanded in custody on October 13, 2017, where they remained until January 10, 2018, when the charges against Plaintiffs were dropped. (*Id.* ¶¶ 59, 61.)[4]

Now, Plaintiffs bring ten causes of action against Defendants: (1) false arrest (under § 1983); (2) excessive force (under § 1983); (3) malicious prosecution, withholding exculpatory evidence, and deliberate fabrication of evidence (under § 1983); (4) interference with parent/child relationship (under § 1983); (5) municipal liability against the City (under *Monell*); (6) false imprisonment; (7) battery; (8) negligence; (9) negligent infliction of emotional distress ("NIED"); and (10) violation of California Civil Code section 52.1 ("Bane Act"). (*See* FAC.) Defendants move for summary judgment as to all claims. (Mot.)

## IV. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues

---

[4] While the charges against Plaintiffs were dropped, Michelle pled guilty or no contest to the charges against her. (DSUF ¶ 62.)

of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The court may not weigh conflicting evidence or make credibility determinations, but there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 322–23. Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to the case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence . . . ." C.D. Cal. L.R. 56-3.

## V. DISCUSSION

Defendants offer sixteen various arguments in support of their Motion. For practical purposes, the Court addresses the arguments in turn, consolidating discussions where possible.

## A.    Brammer's Liability

First, Defendants argue that all claims against Brammer must fail.    As Defendants present different arguments with respect to the § 1983 claims and the state law claims against Brammer, the Court addresses the issues separately.

### 1.    *Brammer's Liability for § 1983 Claims*

Defendants argue that Brammer cannot be liable for any of Plaintiffs' § 1983 claims because Brammer's only involvement was to arrest Michelle, who is not a party to this case.  (*See* Mot. 7; Reply 2.)  Plaintiffs counter that "even if [Brammer] had personally handcuffed no one at all, he would still be an 'integral participant' in . . . Defendants' unlawful activities, because he assisted in providing the 'armed backup' under color of law as his co-Defendants violated Plaintiffs' Constitutional rights."  (Opp'n 9 (citing *Bonivert v. City of Clarkston*, 883 F.3d 865, 879 (9th Cir. 2018); and *Nicholson v. City of Los Angeles*, 935 F.3d 685, 692 (9th Cir. 2019)).)

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996).  "An officer can be held liable for a constitutional violation only when there is a showing of 'integral participation' or 'personal involvement' in the unlawful conduct, as opposed to mere presence at the scene."  *Bonivert v. City of Clarkston*, 883 F.3d 865, 879 (9th Cir. 2018) (citing *Jones v. Williams*, 297 F.3d 930, 935–36 (9th Cir. 2002)).  Indeed, "an officer who fail[s] to intercede when his colleagues [a]re depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights."  *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir. 1994).  However, such liability could only be "premised on a *willful* failure to intercede."  *Id.* at 1448 n.26.

Here, Plaintiffs are correct that Brammer cannot necessarily escape all liability simply because he did not handcuff any of the Plaintiffs.  That said, there is also no evidence to suggest that Brammer was involved in any conspiracy or plan to deprive Plaintiffs of any constitutional rights.  In this way, the cases upon which Plaintiffs rely are inapposite.  In *Bonivert*, the court found liability where the defending officers "developed a plan of entry . . . , provided armed backup to [another officer] as he broke into [the victim's] back door, and entered the home on [the other officers'] heels."  883 F.3d at 879.  In *Nicholson*, the court found liability where the defending officer "acknowledged that he was involved in the decision to handcuff Plaintiffs" and "was the initial officer who set these events into motion, *and* either instructed the other officers to arrest Plaintiffs or consulted with them in that decision."  935 F.3d at 685 (internal quotation marks and brackets omitted).  In contrast, here, the undisputed evidence shows that Brammer was not involved in the decision to arrest Plaintiffs, and there is no evidence showing that Brammer could be liable for excessive force or malicious prosecution against Plaintiffs.  Based on the evidence before the Court, no reasonable juror could conclude otherwise.  Accordingly, summary judgment is **GRANTED** for Brammer as to Plaintiffs' § 1983 claims.

### 2.    *Brammer's Liability for State Law Claims*

As for the state-law claims against Brammer, Defendants cite California Government Code sections 820(a) and 820.8 for the proposition that an officer can only be liable for injuries proximately caused by his own conduct and not for any injury caused by another.  (Mot. 7.)  In opposition, Plaintiffs merely repeat that Brammer can still be liable for injuries caused by his own conduct, and that liability for false arrest may be premised on a conspiracy theory.  (Opp'n 9.)

The parties correctly recite the law.  Subject to some exceptions, "a public employee is liable for injury caused by his act or omission to the same extent as a private person."  Cal. Gov't Code § 820(a).  "[A] public employee is *not* liable for an injury caused by the act or omission of another person" but *is* liable "for injury

proximately caused by his own negligent or wrongful act or omission" *Id.* § 820.8 (emphasis added).

Here, Defendants argue that section 820.8 shields Brammer from liability for Plaintiffs' state-law claims because Brammer was not personally involved in Plaintiffs' arrest. The Court agrees. There is no evidence that Brammer is liable to Plaintiffs for false imprisonment, battery, negligence, NIED, or violation of the Bane Act. Those claims are premised upon conduct allegedly taken by individuals other than Brammer. And as already mentioned, there is no evidence that Brammer was engaged in any conspiracy to falsely arrest Plaintiffs. Accordingly, summary judgment is also **GRANTED** for Brammer as to Plaintiffs' state-law claims.

**B.    Fischer's Liability**

Next, Defendants correctly argue that all claims against Fischer should be dismissed because Fischer has passed away, and Plaintiffs failed to timely move to substitute him as a party. If a motion for substitution of parties is not made by a party or by the decedent's successor or representative within ninety days after service of a statement noting the death, the action by or against the decedent must be dismissed. Fed. R. Civ. P. 25(a)(1). Here, Fischer passed away in June 2020, and Defendants filed a notice thereof on October 1, 2020. (Not. of Party's Death, ECF No. 55.) No motion for substitution has been filed in this case. Accordingly, all claims asserted against Fischer are **DISMISSED**.

**C.    Section 1983 Claims**

Next, the remaining Defendants dispute their liability for Plaintiffs' § 1983 claims. To prevail under § 1983, a plaintiff must prove: (1) that he or she was "deprived of a right secured by the Constitution or laws of the United States," and (2) "that the alleged deprivation was committed under color of state law." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

Qualified immunity "insulates government agents against personal liability for money damages for actions taken in good faith pursuant to their discretionary authority." *Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir. 2001). Qualified immunity requires a two-pronged analysis: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right"; and (2) "whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal quotation marks and citations omitted). A clearly established constitutional right "must be particularized to the facts of the case." *Davis v. United States*, 854 F.3d 594, 599 (9th Cir. 2017) (internal quotation marks omitted). "[T]he focus is on whether the officer had fair notice" that his actions violated a constitutional right and were unlawful. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

A court may address either prong of the qualified immunity analysis first. *Pearson*, 555 U.S. at 236. If the answer to either prong is no, the court need not continue, as the officer is entitled to qualified immunity (either because he has violated no constitutional right, or because the right was not clearly established at the time of the incident). *See Wilkins v. City of Oakland*, 350 F.3d 949, 954–55 (9th Cir. 2013). In this case, because Plaintiffs assert claims for false arrest, excessive force, malicious prosecution, and interference with a parent/child relationship, the Court analyzes qualified immunity for each, separately.

### 1. False Arrest

Plaintiffs' first § 1983 claim is for false arrest. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Lacy v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (quoting *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001)). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the

person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). An unjustified arrest or seizure—i.e., one unsupported by probable cause—is per se unreasonable. *United States v. Guzman-Padilla*, 573 F.3d 865, 876 (9th Cir. 2009); *Morgan v. Woessner*, 997 F.2d 1244, 1252 (9th Cir. 1993). Conclusive evidence of guilt is not necessary, but "mere suspicion, common rumor, or even strong reason to suspect are not enough." *Lopez*, 482 F.3d at 1072 (brackets omitted) (quoting *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984)). When law enforcement officials reasonably but mistakenly conclude that probable cause is present, they should not be held personally liable. *Crow v. Cnty. of San Diego*, 608 F.3d 406, 433 (9th Cir. 2010).

The crime for which Plaintiffs were arrested, witness intimidation, involves knowingly and maliciously preventing or dissuading, or attempting to prevent or dissuade, a victim or witness from attending or giving testimony at any trial, proceeding, or inquiry authorized by law. Cal. Pen. Code § 136.1(a). "There is, of course, no talismanic requirement that a defendant must say 'Don't testify' or words tantamount thereto, in order to commit the charged offense." *People v. Mendoza*, 59 Cal. App. 4th 1333, 1344 (1997) (quoting *People v. Thomas*, 83 Cal. App. 3d 511, 514 (1978)). "As long as his words or actions support the inference that he (1) sought to prevent or dissuade a potential witness from attending upon a trial or (2) attempted by threat of force to induce a person to withhold testimony, a defendant is properly held to answer." *Thomas*, 83 Cal. App. 3d at 514 (internal citations omitted).

Here, it was reported to Bigel and Garcia that Plaintiffs were recording or photographing witnesses and their families just as the Trial was beginning, specifically to intimidate the prosecution's witnesses to prevent them from testifying against Gonzalez Jr. (*See* DSUF ¶¶ 25–27.) One of the witnesses' mothers, Phipps, began crying and shouting that Plaintiffs were intimidating her by taking pictures. (*Id.* ¶ 17.) The other witnesses' mother, Reyes, told Garcia that she did *not* see Plaintiffs trying to intimidate anyone, but that she had heard about it happening. (*Id.* ¶ 25.)

During the altercation between Michelle and the witnesses, Garcia heard Michelle say something to the effect that the witnesses should stop "snitching." (*Id.* ¶ 16.) Thus, Defendants argue that they had probable cause to arrest Plaintiffs.

But the issue is not so simple. Plaintiffs correctly note that "an officer may not ignore exculpatory evidence that would 'negate a finding of probable cause.'" *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) (quoting *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003)); *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("In establishing probable cause, officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses."). In this case, Plaintiffs told Defendants that they were the ones being recorded, not the other way around; and they offered to let officers search through their phones to prove they had not taken any photos. (*See* DSUF ¶¶ 41–45.) Without making any credibility determinations at this juncture and viewing the facts in the light most favorable to Plaintiffs, these facts tend to cut against a finding of probable cause.

If no other facts were before the Court, a reasonable juror could find that the reports of intimidation by Plaintiffs were merely common rumor or cause for strong suspicion, something short of probable cause. But the video footage is significant here, as Defendants based their probable cause on Marshke's review of the footage and subsequent report to Bigel and Garcia. Having reviewed the footage, the Court finds that it was reasonable for Marshke to conclude that Lidia pointed her phone toward the prosecution's witnesses as if recording or photographing them. Although the footage is grainy, it does appear that Lidia stepped away from the Gonzalez Group and pointed her phone towards the witnesses as if to record or photograph them. Lidia then clearly turned away from the witnesses and back toward the Gonzalez Group exactly when the man in yellow pants stood up and began walking towards her. It was not unreasonable for Marschke to conclude that Lidia had, in fact, pointed her phone

towards the witnesses as if to record them. Thus, given the circumstances, probable cause existed to arrest Lidia for witness intimidation, and Defendants are therefore entitled to qualified immunity as to Lidia's claim for false arrest.

As to Arciga and Martinez, however, the footage does not show either of them engaging in any conduct that might be similarly viewed. (*See* Corridor Video.) And there is no other evidence that elevates the common rumor of their involvement to the level of probable cause required for their arrest. For instance, the altercation that occurred outside of the courtroom involved Michelle and the prosecution's witnesses, not Arciga or Martinez. In the courtroom, it was Lidia who took her phone out of her purse, not Arciga or Martinez. In short, the evidence viewed in the light most favorable to Plaintiffs does not clearly establish that Defendants had probable cause to arrest Arciga or Martinez.

Nevertheless, even absent probable cause, Defendants may be entitled to qualified immunity as to Arciga and Martinez's claims if the right that was violated was not clearly established. Indeed, Defendants argue that Plaintiffs fail to cite any "case describing any constitutional violation for arresting a group of individuals under the circumstances confronted by the officer [D]efendants." (Mot. 20.) And to be sure, this case presents tricky circumstances. A citizen witness accused a group of individuals of all engaging in the same criminal behavior, which led to Defendants interviewing witnesses and reviewing video footage before determining that there was probable cause to arrest everyone in the group. At least for summary judgment purposes, the evidence shows that there was probable cause to arrest Lidia, but not necessarily for Arciga or Martinez. Still, Defendants argue that they are entitled to qualified immunity because they reasonably but mistakenly concluded that probable cause was present. (Mot. 20 (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).)

Plaintiffs respond that officers have a duty to investigate before making arrests and that any warrantless arrest must be supported by probable cause. (Opp'n 10–12.)

Although these assertions are true, generally speaking, Plaintiffs bear the burden of establishing that a right was clearly established, *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002), and the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition," *Blankenhorn v. City of Orange*, 485 F.3d 463, 476 (9th Cir. 2007). In other words, Plaintiffs must "identify a case where an officer acting under similar circumstances as [Defendants] was held to have violated the Fourth Amendment." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Plaintiffs do not meet their burden; they merely lay out false arrest principles "at only a general level." *See id.*; (Opp'n 10–12). Indeed, where four individuals are accused, as a group, of witness intimidation, and there is probable cause to arrest two of them, it could be a reasonable mistake for officers to arrest all four. In any event, Plaintiffs do not submit any case clearly establishing a constitutional violation under similar circumstances, and Defendants are therefore entitled to qualified immunity as to Arciga and Martinez's claim for false arrest.

In sum, even drawing all inferences in favor of Plaintiffs, Defendants are entitled to qualified immunity as to Plaintiffs' § 1983 false arrest claim. As to Lidia, probable cause existed for her arrest. As for Arciga and Martinez, Plaintiffs fail to establish that the constitutional right allegedly violated was clearly established. Thus, summary judgment is **GRANTED** in favor of Defendants as to this claim.

### 2. *Excessive Force*

Plaintiffs' next § 1983 claim is for excessive force. Excessive use of force incident to a search or seizure is subject to the Fourth Amendment's objective reasonableness requirement. *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]here are no per se rules in the Fourth Amendment excessive force context; rather, courts must still slosh [their] way through the factbound morass of 'reasonableness.'" *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (alteration and internal quotation marks omitted) (quoting *Scott*, 550 U.S. at 383).

Sometimes, "tight handcuffing can constitute excessive force." *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000) (citing *Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993) (affirming denial of summary judgment where defendants fastened handcuffs "so tightly . . . that they caused [the plaintiff] pain and left bruises that lasted for several weeks"); *Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989) (reversing summary judgment where a witness testified to observing an unnecessary level of force and the plaintiff had "visited the local medical center for treatment of injuries sustained as a result of the arrest[,] and she had bruises on her wrist and under her upper arm, and she complained of pain in her little finger and upper arm"")). Furthermore, because the issue of tight handcuffing is often fact-specific and dependent on the credibility of witnesses, excessive force claims based on tight handcuffing will often (but not always) present a jury question. *See generally Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) ("Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a question of fact best resolved by a jury; only in the absence of material disputes is it a pure question of law." (internal quotation marks omitted)).

On the other hand, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citation omitted). The same idea applies to claims of tight handcuffing. *See, e.g.*, *Pollack v. Narreau*, No. CV-08-0092-PHX-DGC, 2009 WL 775427, at *5 (D. Ariz. Mar. 20, 2009) (citing *Freeman v. Gore*, 483 F.3d 404, 416–17 (5th Cir. 2007); *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007); *Gilles v. Davis*, 427 F.3d 197, 208 (3d Cir. 2005)) (finding no constitutional violation where the plaintiff "was not significantly injured and did not seek medical attention for his wrists"); *see also LaLonde*, 204 F.3d at 964 (Trott, Circuit J., concurring in part and dissenting in part) ("Handcuffs are uncomfortable and unpleasant . . . . Handcuffing an arrestee is standard practice, everywhere.").

Here, Plaintiffs allege that the handcuffs placed on them were too tight, causing wrist pain and leaving red marks.  (DSUF ¶ 39; PSGD ¶ 40.)  But they concede that the handcuffs did not cause bruising or abrasions, and that they did not seek any medical treatment.  (DSUF ¶ 40; PSGD ¶ 40.)  Plaintiffs cite cases like *LaLonde* and *Hansen* to argue that the excessive force claim should be presented to a jury, (Opp'n 20), but that is unnecessary because, as was the case in *Pollack*, "[Plaintiffs'] injuries do not rise to the level of the nerve damage or weeks-long bruising that occurred in [*LaLonde* or *Hansen*]," *see Pollack*, 2009 WL 775427, at *5.  Rather, Plaintiffs were not significantly injured by their handcuffs, nor did they seek medical attention for any injuries that may have been attributable to excessively tight handcuffs.  Even viewing these facts in the light most favorable to Plaintiffs, the force used by Defendants does not rise to the level of a constitutional violation.  Accordingly, summary judgment is **GRANTED** in favor of Defendants on Plaintiffs' § 1983 excessive force claims.

### 3. *Malicious Prosecution, Withholding Exculpatory Evidence, and Deliberate Fabrication of Evidence*

Plaintiffs' next § 1983 claim is for malicious prosecution.  To make a claim for malicious prosecution, a plaintiff "must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right."  *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995).  Further, a malicious prosecution claim under § 1983 is based on state-law elements.  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  In California, that means a plaintiff must prove that the prosecution was (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice.  *Villa v. Cole*, 4 Cal. App. 4th 1327, 1335 (1992).

The Ninth Circuit has recognized that filing "a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that

the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981), *overruled in part on other grounds by Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008). To rebut this presumption, a plaintiff bears the burden of producing evidence that the prosecutor acted contrary to her independent judgment, such as evidence that the officers supplied false information, withheld relevant information, or exerted unreasonable pressure on the district attorney. *Newman v. Cnty. of Orange*, 457 F.3d 991, 994 (9th Cir. 2006).

Here, the District Attorney filed a criminal complaint against Plaintiffs for witness intimidation with a gang enhancement. (DSUF ¶¶ 57–58.) Before that, Garcia and Bigel submitted all police reports and supplemental police reports to the District Attorney's office. (*Id.* ¶ 60.) Plaintiffs argue that the prosecution lacked probable cause, (Opp'n 19), but that issue is ultimately inconsequential. Plaintiffs offer no evidence to rebut the presumption that the District Attorney's office acted according to its independent judgment, which immunizes Defendants from liability for the damages asserted under this cause of action. Thus, summary judgment is **GRANTED** in Defendants' favor as to Plaintiffs' malicious prosecution § 1983 claim.

### 4. *Interference with Parent/Child Relationship*

Next, Plaintiffs bring a § 1983 claim against Defendants for interference with a parent-child relationship. Interference with such a relationship amounts to a constitutional violation when a parent or child is "wrongfully detained," *Crowe*, 608 F.3d at 441, in a manner that "shock[s] the conscience" or "offend[s] the community's sense of fair play and decency," *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011). "As relevant here, such conduct shocks the conscience where actual deliberation by the officer is practical, and the officer acts with deliberate indifference *to the parental rights at issue. Rabinovitz v. City of Los Angeles*, 287 F. Supp. 3d 933, 963 (C.D. Cal. Mar. 2, 2018) (emphasis added) (internal quotation marks and brackets omitted) (quoting *Tatum v. Moody*, 768 F.3d 806, 821 (9th Cir.

2014)).  "Deliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions.  It entails something more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013).

In this case, Plaintiffs argue that "Defendants separated Plaintiffs from their parents/children by causing them to become confined in jail for several months." (Opp'n 22.)  But as discussed above, the filing of a criminal complaint immunizes investigating officers from damages suffered thereafter.  *Smiddy*, 665 F.2d at 266.  In this case, Plaintiffs spent months in jail after the District Attorney filed criminal charges with a gang enhancement, thereby increasing Plaintiffs' bail beyond a point which they could afford.  (DSUF ¶¶ 57–59, 61.)  Plaintiffs offer no evidence that Defendants acted with deliberate indifference to Plaintiffs' parental rights—indeed, it seems the only evidence even remotely relevant to this issue is that Plaintiffs did not have any minor children at the time of their arrest.  (*Id.* ¶ 63.)  Thus, Defendants are similarly shielded by the presumption of the prosecutor's independent judgment, and summary judgment is **GRANTED** in favor of Defendants as to Plaintiffs' § 1983 claim for interference with parent-child relationships.

### 5. *Monell Claim*

Plaintiffs' last § 1983 claim is a *Monell* claim asserted against the City.  A municipality may be liable for causing a cognizable injury under 42 U.S.C. § 1983 if the injury is a result of a custom or policy of the municipality.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  To hold a municipality liable for the actions of its officers and employees, a plaintiff must allege one of the following: "(1) that a [municipal] employee was acting pursuant to an expressly adopted official policy; (2) that a [municipal] employee was acting pursuant to a longstanding practice or custom; or (3) that a [municipal] employee was acting as a 'final policymaker.'"  *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004).  Where there is a policy at play, a plaintiff

must prove "(1) that [the plaintiff] possessed a constitutional right of which [they] were deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Additionally, under some circumstances, a municipality can be held liable for failure to train its police officers. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). However, a governmental unit may not be liable under § 1983 simply based on a "respondeat superior theory." *Monell*, 436 U.S. at 691.

Here, Defendants argue that all of Plaintiffs' claims against the City fail because they rely only on a respondeat superior theory. As for Plaintiffs' fifth cause of action, asserted against the City under *Monell*, Defendants argue that Plaintiffs simply have no evidence to support any theory of *Monell* liability. (Mot. 21–22.) Defendants are correct. Plaintiffs do not even address this issue in their Opposition, and there appears to be no evidence of any unconstitutional policies or customs, or any policymaking by any City supervisors. And to the extent Plaintiffs name the City as a Defendant in every other cause of action in the FAC, Plaintiffs appear to rely solely on a theory of respondeat superior, which is insufficient as a matter of law. Accordingly, summary judgment is **GRANTED** in favor of the City as to all claims brought against the City.

**D.    State Law Claims**

Next, Defendants seek summary judgment on all of Plaintiffs' state-law claims.

*1.    False Imprisonment*

Defendants raise the same argument against Plaintiffs' state-law false imprisonment claim as they did against Plaintiffs' § 1983 false arrest claim—they argue that they had probable cause to arrest Plaintiffs. As already discussed above, probable cause existed to arrest Lidia, but not necessarily Arciga and Martinez. *See supra*, Part V.C.1. Furthermore, although Defendants are entitled to qualified

immunity as to Plaintiffs' § 1983 false arrest claim, the same does not apply to their state-law claim for false imprisonment. *See Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 788–89 (2017) (rejecting the argument that federal qualified immunity provides any "additional layer of protection from civil liability [for false imprisonment] beyond what already exists through the doctrine of probable cause"). Thus, because Defendants fail to raise valid grounds for summary judgment as to the state-law false imprisonment claim insofar as it is brought by Arciga and Martinez, summary judgment is **GRANTED** in favor of Defendants as to Lidia's false imprisonment claim, but summary judgment is **DENIED** as to Arciga and Martinez's state-law false imprisonment claims.

### 2. Battery

Next, the parties agree that Plaintiffs' state-law battery claim mirrors their § 1983 excessive force claim. (Mot. 22–23; Opp'n 24.) "[T]he reasonableness standard for a claim of state law battery by a peace officer is the same as the Fourth Amendment reasonableness standard for excessive force claims." *See Olvera v. City of Modesto*, 38 F. Supp. 3d 1162, 1181 (E.D. Cal. 2014). Thus, for reasons already explained above with respect to Plaintiffs' excessive force claim, summary judgment is **GRANTED** in favor of Defendants as to Plaintiffs' battery claim.

### 3. Negligence and NIED

Similarly, Plaintiffs' negligence and NIED claims "flow[] 'from the same facts as the alleged Fourth Amendment violation for excessive force and are measured by the same reasonableness standard of the Fourth Amendment.'" *See id.* (quoting *Abston v. City of Merced*, No. 1:09-cv-00511 OWW OLB, 2011 WL 2118517, at \*16 (E.D. Cal. May 24, 2011), *aff'd*, 506 F. App'x 650 (9th Cir. 2013)). Thus, again for reasons already explained, summary judgment is **GRANTED** in favor of Defendants as to Plaintiffs' negligence and NIED claim.

#### *4.* **Bane Act**

Plaintiffs' final cause of action is brought under the Bane Act. The Bane Act was enacted to address hate crimes; it "civilly protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out '*by threats, intimidation, or coercion*.'" *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (emphasis added) (quoting *Venegas v. Cnty. of Los Angeles*, 153 Cal. App. 4th 1230, 1238 (2007)). A plaintiff that asserts a Bane Act claim must allege both a constitutional violation and a specific intent to violate the plaintiff's constitutional right. *Id.* at 1043. "[A] wrongful arrest or detention, without more, does not satisfy both elements" of a Bane Act claim. *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 49 (2015). In any event, here, Plaintiffs exclusively on a theory of excessive force. (*See* Opp'n 24–25.) Thus, again for reasons already explained, summary judgment is **GRANTED** in favor of Defendants as to Plaintiffs' Bane Act claim.

## VI. CONCLUSION

In summary, Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. (ECF No. 56.) All claims brought against Fischer are **DISMISSED**. Summary judgment is **GRANTED** for Brammer and the City as to all claims brought against them. Summary judgment is **DENIED** as to the state-law false imprisonment claim insofar as it is asserted by Arciga and Martinez. And summary judgment is **GRANTED** in favor of Defendants as to all other claims.

**IT IS SO ORDERED.**

June 2, 2021

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**